IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

*FILED*

DEC 2 9 2014

THOMAS G. BRUTON
CLERK U.S. DISTRICT COURT

Abdullah Musa Khadijah's

    Plaintiff

Vs

Case No: 14 C 6389

14 C 6389

S. A. Godinez, Director of Illinois Department of Corrections
Brad Curry, Director of Parole Officers
Alan Scott Hahn, Supervisor of Parole Officers
L. Muhammad, Parole Officer
Unknown Parole Officers
Warden of Stateville Correction Center
Warden Nedra Chandler, Dixon Correction Center
Chief Warrant Officer
Dorothy Brown, Clerk of Cook County Circuit Court
Mr. Freeman, Pacific Garden Mission

Judge Gary Feinerman

$2,220,000.00

AMENDED COMPLAINT

Plaintiff, Abdullah Musa Khadijah, alleges as follows:

Introduction

This is a complaint for damages for violation of civil rights under 42 U.S.C.A. 1983 and under the fourth and 14th amendments to the United States Constitution; Malicious Prosecution under 42 U.S.C.A. under 42 U.S.C.A. 1983; Money-related claims under 42 U.S.C.A. 1983 and false imprisonment; intentional infliction of emotional distress, violation of state city rights and malicious prosecution under supplemental jurisdiction, 28 U.S.C.A. 1367 (a).

Plaintiff alleges that his parole violation, revocation was fabricated and improperly revoked knowingly and willfully by the prisoner review board and that the decision of the prisoner review board was knowing based upon a fraudulent parole violation report, submitted by parole officer supervisor who wasn't a witness.

Plaintiff alleges that his parole was revoked due to a fable by Mr. Freemen who initiated the allegation for the grounds that there was some kind of romance going on between plaintiff and his parole Officer L. Muhammad, or that plaintiff was harassing her with his meeting and conversations.

Plaintiff asset that Alan Scott Hahn drafted the false criminal charges and the parole violations and also the parole violation of conditions. The falsified and fabricated parole violation was hidden and disguised behind the false criminal charges.

Plaintiff was wrongfully arrested, charges and reimprisoned for another 18 months for the alleged parole violation on the criminal offenses, plaintiff did not commit. There is no record of plaintiff being charge with other, only in IDOC files but not in the states attorney's nor the clerk's office (see exhibits).

This is a civil action seeking monetary damages for the tortions conduct of defendants knowingly that caused plaintiff's wrongful reimprisonment. The defendant, all of them, conspired under the auspice of two defendants Alan Scott Hahn,

and Mr. Freeman in a personal animosity, vindictive motive simply because Mr. Freeman made another believe that there was a romance affair between plaintiff and parole officer L. Muhammad.

This defendant deprived plaintiff due process, deprivation of liberty and property and liberty interest under color of law.

1. Plaintiff

A. Abdullah Musa Khadijah
B. No aliases, former name from change Rufus Lee Jackson, Jr. 1975, 1801 S. Wabash, Chicago, Illinois 60616. Plaintiff was homeless since his release from Dixen Correction Center. New address.

II. Defendants:
1. S. A. Godinez, Director of Illinois Department of Correction IDOL Springfield, Illinois;
2. Brad Curry, Director of Illinois Department of Correction Parole Officers IDOC Springfield, Illinois
3. Alan Scott Hahn, Parole Officer for Cook County Chicago, Illinois
4. L. Muhammad, Parole Officer for Cook County Chicago, Illinois
5. 4 unknown Parole Officers for Cook County Chicago, Illinois
6. Warden of Statesville Correctional Center Joliet, Illinois4
7. Nedra Chandler, Warden of Dixon Correction Center Dixon, Illinois
8. Chief Warrant Officer unknown Cook County Jail Chicago, Illinois
9. Dorothy Brown, Clerk of the Circuit Court Cook County, Illinois
10. Mr. Freedman, employee of Pacific Garden Mission, Chicago, Illinois

III. List All Lawsuits

A. Names of cases and docket number
   Abdullah Musa Khadijah, plaintiff v State of Illinois #14CV6389 Judge Feinerman

B. Approx. date of filing lawsuit: August 19, 2014

C. No other Plaintiffs

D. S. A. Godinez, Director of Illinois Department of Corrections
Brad Curry, Director of Parole Officers
Alan Scott Hahn, Supervisor of Parole Officers
L. Muhammad, Parole Officer #141
4 Unknown Parole Officers
Warden of Statesville Correctional Center
Nedra Chandler, Warden of Dixon Correction Center
Chief Warrant Officer, Unknown
Dorothy Brown, Clerk of the Circuit Court Cook County
Mr. Freeman, Pacific Garden Mission

E. Court in which the lawsuit was filed, federal court United States District Court, Northern District of Illinois, Eastern Division, Chicago, Illinois.

F. Name of Judge to whom case was assigned: Judge Feinerman

G. Basic claim made: Wrongfully arrested and reimprisionment for 18 months for fabricated falsified parole violation. Illegal reimprisonment due to assumed romance between plaintiff and has parole officer.

H. Disposition of this case, plaintiff has to amend the case.

I. Approx. date of disposition dead line: December 29, 2014

Plaintiff states that the real facts, the parole violation stemmed from allegation of two of the defendants, Alan Scott Hahn and Mr. Freeman. It comes from a personal protective, retaliation, animosity, jealous, vindictive motive, resentment revengeful act against plaintiff due to Mr. Freeman assumed that there was either a romance flung going on due to plaintiff visits and conversations with defendant L. Muhammad, and that plaintiff was harassment or harassing of the parole officers L. Muhammad. Neither was going on.

## FIRST CAUSE OF ACTION

Malicious parole violation hearing, fabrication of parole violation report leading to false reimprisonment, arrest, lost of liberty by defendants.

## FACTS

On or about March 1, 2012 at Pacific Garden Mission, the defendants, L. Muhammad and four unknown parole officer apprehension gang acting under floor of authority along with Alan Scott Hahn, Supervisor of parole officers, and a non-employee of IDOC were the moving force behind the fabricated parole violation, and with criminal offense charges that was instituted the plaintiff.

Plaintiff states he was charged with molesting his (MSR) Mandatory Supervised Released agreement. Plaintiff wondered how? When he hadn't acquired any new criminal offenses, nor parole violations of conditions.

A criminal offense, parole violation can't be filed on a new charge until there's a court proceedings to rule on the criminal offense charged.

Plaintiff asked the question of many state officers, where plaintiff could not get an answer. (see exhibit). What is the procedures parole officer take when they personal charges against a parolee? Do they arrest the parolee, and take him to the nearest police station for booking for the criminal offense charges, against their person or do they transport the parolee back to Statesville Correctional Center.

Plaintiff's understanding is that the difference, between the two types of violations is a violation of conditions of parole agreements, and the violation of parole in a new criminal charge.

In this case plaintiff as charged with three new criminal offense charges. There is no record of such charges filed with the states attorney's office or clerk's office (see exhibit).

Plaintiff was charged with assault, disorderly conduct, and indecent exposure. Record does not show these charges, but plaintiff as arrested on such charges. Plaintiff did not know of the charges until 8 days confined in Statesville Correctional Center on March 8, 2012.

The second part, is how could a criminal offense be consolidated subterfuge into an administrative violation of parole condition, without a judicial hearing from a judge? Maybe plaintiff is misunderstanding the different procedures used in the concept of criminal charges, judicial and ministerial hearing administrative.

A criminal charge cannot be until there is a court proceedings to rule a parole violation. Plaintiff was arrest under false pretense of criminal charges and these charges was hidden under a parole violation.

Plaintiff alleges, that the criminal offense charges was to violate to the plaintiff to arrest him, and reimprison him. This the violation was instituted to cover the false charges. (see exhibit parole violation report, and the two add on, sheet on March 15, 2012 at the parole board hearing).

Plaintiff states that it's not in record form plaintiff asserts the parole violation report was very vague, indefinite, uncertain, ambiguous, erroneous, mislabel a fraud, forgery in meaning. Confusing sage of violation criminal statute in one part and in another stipulating a violating condition.

Plaintiff is seeking clarification on the procedures taken by the parole officers and agencies offices and what the law says, on the way the parole officers charges a parole with a criminal offense. Through the technique used by Alan Scott Hahn and others have used an unwritten unofficial misconduct custom policy of Illinois Department of Correction on making up violations and other illegal procedures, as they see fit. Also under Illinois Department of Correction 20 Illinois administration code CH:1d20 Rules of Conduct, official and employees thus Act Section 120, 30,40,50, 70, 80, 90 and 100.

Plaintiff states that Illinois and not-state employees each of the defendants was aware of the acts of the other defendants in support of the illegal acts of the enterprise and each defendants is culpable of the acts.

### DEFENDANT MR. FREEMAN

On or about March 1, 2012, defendant Mr. Freeman, non-employee of IDOC who is employed by Pacific Garden Mission, aided and initiated the illegal arrest, reimprisonment by IDOC parole officers, by giving false information to parole officer supervisor, Alan Scott Hahn.

On March 1, 2012 at Pacific Garden Mission, Mr. Freeman gave parole officer Alan Scott Hahn, the impression, that there was either a romance affair between plaintiff and parole officer L. Muhammad, or that plaintiff was harassing the parole officer b his visiting and talking to his parole officer on a regular bases. Plaintiff has a right, because that what she was paid to do and assist parolees.

Plaintiff stated to Mr. Freeman that plaintiff was to Pacific Garden Mission to housing due to him being parole there and not by choice and that PGM has nothing to do with IDOC.

Plaintiff assert that Mr. Freeman stated that the plaintiff had no reason to be waiting to see and talk to her in the office. Plaintiff a loud voice one time, to Mr. Freeman to stay out of my business and that I can take care of my business when it want.

Plaintiff stated to Mr. Freeman that he should be focus on the 500 homeless people he has at Pacific Garden Mission and stop being concern about my affairs.

Plaintiff found out February 18, 2012, that Mr. Freeman was asking around to the other female parole officers if the plaintiff harassing the other female parole officers. Plaintiff did not know Mr. Freeman had been asking questions about

his talking to his parole officer. Mr. Freeman had some animosity and aggression toward plaintiff visiting his parole officer, it was business. Besides the business the parole officer, plaintiff and L. Muhammad talked cordially.

Plaintiff had written several grievances on Mr. Freeman to his supervisors on his conduct and actions, speaking up for the homeless of Pacific Garden Mission. On January 26, 2012 or about, plaintiff and Freeman has an exchange of words about plaintiff property came up missing from the storeroom. Plaintiff wrote a grievance on the matter. Mr. Freeman told the security officers to escort plaintiff out of the mission. It was very cold that day and plaintiff had to take all of his personal thing with him.

### DEFENDANT L. MUHAMMAD

Three days later after plaintiff returned, he reported to L. Muhammad his parole officer. She stated that she was going to talk to Mr. Freeman. She must have because he had a vindictive attitude towards the plaintiff. Plaintiff alleges that many different people had been following plaintiff sense he was released from Dixon Correctional Center, stayed at Pacific Garden Mission. These people have and had been following plaintiff sense July 6, 2012.

Plaintiff alleges that on March 1, 2012 that defendant L. Muhammad, parole officer, participated in the conspiracy and actually help, aided, set-up plaintiff in the arrest in her office.

Plaintiff and his parole officers L. Muhammad, was in her office talking and having a discussion on him getting off parole and moving out of Pacific Garden Mission and getting another parole officers on the south side.

On March 1, 2012, plaintiff as explaining to parole officers Mahammad that he wasn't getting along with Mr. Freeman. This day plaintiff and his parole officer was having a cordial conversation (see exhibit) plaintiff saw his parole officer stated talking on the cell phone.

On March 1, 2012 plaintiff saw that his parole officer was busy having a conversation on her phone, plaintiff told parole officer that he was leaving.

Defendant Muhammad, stated you don't have to leave, its ok, we could finish talking. Plaintiff sat back down in the chair while talking and drafting up his proposal for this support company.

Plaintiff notice on March 1, 2012 about 1:30 pm this whole scenario that nothing appeared to wrong. Plaintiff saw that defendant out in the hallway to talking. Plaintiff thought nothing wrong, she just wanted to take private.

Defendant L. Muhammad came back in her office and we resumed talking about the issues she had brought up (see exhibits). Plaintiff stated that he should leave because she was busy, maybe talking to other parolee and that he didn't want to be in the way.

Plaintiff states that on March 1, 2012 defendant L. Muhammad insisted that I sit back down and continue talking about her property and other problems she was having. Plaintiff knows she has two children like he do.

Plaintiff and his parole officer spoke on the two religion directors. Plaintiff explained the difference between the two and that he follow W. D. Muhammad.

On March 1, 2012, while sitting in the office of his parole officer L. Muhammad Plaintiff was having dialog discussion on different subject with his parole officer while he was writing a proposal, sitting in front of her desk.

On March 1, 2012 approx. between 1:30 pm plaintiff notice that defendant got up again from her desk, while taking on her cell phone to someone. She stopped once again talking to someone of on the other end.

Plaintiff never look up, he was concentrating on the puppet company proposal defendant, L. Muhammad, came back into her office after talking she seem to be not concern about anything, she still had a smile, plaintiff saw no discomfort, she didn't seem threaten.

On March 1, 2012 while in Pacific Garden Mission, on the office of plaintiff's parole officer, plaintiff since approx. 2:00 pm until 4:00 pm he had tried at three times to leave the office of his parole officer. Defendant, stated to plaintiff that could stay and finish our conversation (see exhibit).

On March 1, 2012, in the office of parole officer defendant L. Muhammad, after she convince plaintiff to stay and talk with until she went home. Plaintiff never knew that they have a time limit and that she never told plaintiff that we parolees can't spend a lot of time in her office.

Plaintiff sat back down, with his legs cross, to lift up his clip board he that he was writing on. Plaintiff was writing sitting in her office, we were talking, she would talk on the cell-phone, and I was busy constructing the proposal when 4 more officers came to her office door.

On March 12, 2012, the men dress all in black, tried the door and tried to get in and couldn't. Plaintiff jump up and started for the door to open it for them. Plaintiff was about 3 feet from the door. Defendant L. Muhammad said, don't open it, they will open it. Plaintiff stated I'm right here, I can open it, I don't mind. She again said no, let them open it. They will get it open.

Plaintiff looked at her, and returned to the chair, he was sitting in for at least 3 hours, and sat back down pick up his claim work and finish writing the proposal, crossed his legs once again. She was looking at them.

The four defendants, parole officers, who was at the door finally open the door they didn't have the keys. Plaintiff thought defendant Muhammad was going to open the door from the inside, she didn't. She knew the guys.

On March 1, 2012, plaintiff, states the four men dress in all black, plaintiff thought they were gang-bangers, in the way of their behavior and actions and the way they there were dress.

These defendants all four of them came in the office like storm troopers, came straight over to plaintiff and told him to put his pen and paper writing board down. Plaintiff asked what seems to be the problem.

Defendants, unknown parole officers who barged into the office they told me to stand-up. Plaintiff stoop up and again asked what the problem? They told me to put my hand behind my back plaintiff did such. They handcuff plaintiff.

On March 1, 2012, plaintiff asked these men why they were putting handcuffs on me. One of the guys told plaintiff to shut-up; they looked the plaintiff up and down and even searched his person.

At this time everybody the homeless persons was looking at the incident from the windows, inside the dayroom.

On March 1, 2012, approx.. 4:00 pm and 4:30 pm, plaintiff asked again what seems to be the problem? Plaintiff looked over at this parole officer, she said nothing. Really plaintiff thought he had an allegation against from the outside the mission.

Plaintiff never thought the arrest came from his parole officer, L. Muhammad, because he knew that he didn't cause an infraction towards her or Pacific Garden Mission. Plaintiff was puzzled. Plaintiff saw defendant L. Muhammad over by the door whispering to one of the other parole officers.

On March 1, 2012, approx. 4:30 pm plaintiff was let out to their car and plaintiff was told to give all his personal belongings money, cell-phone. Plaintiff was led out their car and take to their office on Roosevelt Road.

On March 1, 2012 approx. 5:30 pm plaintiff was held there for at least 4 hours when one of the arresting parole officers came and kicked plaintiff leg and told him to get up. They gave plaintiff a drug drop. Plaintiff stated that he don't use drugs or drink.

Plaintiff stated where are we going now? The officer stated to Statesville. Plaintiff asked why are we going to Statesville? Defendant didn't answer. Plaintiff asked what was he being arrested for, that defendant said don't worry about it. Plaintiff stated, I must worry about it because you guys kidnaped me off of the streets, and all my property is still at Pacific Garden Mission.

Plaintiff asserts that if defendant L. Muhammad, thought that the plaintiff was acting out of conduct, she could have secretly call the police, and she could have the plaintiff 2 blocks away to be nearest police station or 18th and State St. She could have secretly call the security who was in the next office, where there are lots of windows, everybody could see into her off ice. She could have arrested plaintiff and placed handcuffs on herself. She had her weapon, even her voice, to place plaintiff under arrest. The same way she secretly called those 4 parole officers who do the apprehension green squad.

Any of those things she could have done without my throwing, if plaintiff was a threat to her person. Defendant Muhammad knew or should have known that she was the key part of the conspiracy.

## PAROLE OFFICERS

On March 1, 2012, plaintiff states that parole officers working under the auspice of parole officer supervisor, Alan Scott Hahn. Their actions and omissions were carried out as deliberate, willfully, intentional and malicious manner with the specific intent to injure and deny plaintiff liberty.

On March 1, 2012 at Pacific Garden Mission in the office of parole officer L. Muhammad, plaintiff states that neither of those defendants had, held displayed a warrant for plaintiff's arrest. The way these guys barged into the office, dressed in all black, I thought they were gangbangers. They displayed no badge, ID or announced who they were.

On March 1, 2012, at Pacific Garden Mission, none of these officers, defendants, have moving papers. Plaintiff still was wondering what he was being arrested for. Plaintiff knew he didn't have any new charges, not parole violation of his conditions.

On March 1, 2012 at or approx. 6:00 pm one of these apprehension officers drove plaintiff all the way to Statesville Correctional Center in a hurry. The officers was driving at least 70-80 miles per hour, pretty fast.

When the officer and plaintiff did reach Statesville Correctional Center, he had not paperwork. He talk to the officer at the back gate and the officer let us into Statesville. Plaintiff state I thought we were going to the county jail? Since he had a parole violation. That's where you guys take all the other parole violators, or to 18th police station, why Statesville Correctional Center? Plaintiff got not answer. You guys just follow order?

Plaintiff states that these defendants knew or should have known the actions that they were taking all of them aided and assisted conspired to the fabricated parole violation.

## DEFENDANT ALAN SCOTT HAHN

On March 6, 2012 defendant Alan Scott Hahn is names the perpetrator, master mind behind, architect in the official misconduct and the one with the perverted mind, who conceived and added the sexual conduct allegation to make it fit into the violation.
Plaintiff asserts that it was parole officer supervisor, Alan Scott Hahn, who ordered his subordinates to arrest plaintiff on criminal charges, assault, disorderly conduct and indecent exposure, for the violation arrest.

Plaintiff assert that after Alan Scott Hahn, could not get the sexual charges to weigh in a court of law, he reverted to a parole violation hidden behind the criminal charges.

Plaintiff alleges that the defendant used unwritten official conduct used the violation of parole as a personal retaliation masquerading as a violation of plaintiff's parole agreement.

It as defendant, Alan Scott Hahn, who fabricated the parole violation by wrong the parole violation report. Defendant wasn't at Pacific Garden Mission at the time of the incident on March 1, 2012.

Plaintiff's parole officer, L. Muhammad, did not write the violation, it was defendant who drafted the report. On the violation report where the signature are the signatures show Alan Scott Hahn signed March 6, 2012. Plaintiff received the report to be signed in Statesville 8 days after reincarsaration. Plaintiff signed March 8, 2012 plaintiff's parole officer, L. Muhammad, maybe she signed March 12, 2012.

Plaintiff asserts that when a violation is written by the parole officer, signs it first. Then the parole offers give it to his or her supervisor, who then signs it, and last one to sign the violation, is the parolee. At least I thought that was the proper protocol.

Plaintiff states that if his parole officer had written the report he believes she would have signed it first. Plaintiff saw a signed complaint form. It was Alan Scott Hahn who wrote the inflaming words on the report.

Plaintiff states that the legal papers pertaining to his complain 3 times since plaintiff was release from Dixon Correctional Center July 5, 2013 was stolen by people on the streets, homeless, buns.

Plaintiff alleges that defendant, Alan Scott Hahn, who stated the inception of the violation and initiated the conspiracy, where also, put Alan Scott Hahn in the fore front due to his protective attitude towards defendant, L. Muhammad and his animosity, jealousy, vindictive motive. He also conjured the thought that there was something going on. (exhibit A) Would the falsehood, to plaintiff complaint, which was stolen.

Plaintiff alleges that it was Alan Scott Hahn, who defendant acts, and omissions including, but not limited to, by knowingly, willing, intentionally, planned, conspired, recklessly made-up providing materially false, misleading and incomplete information, and or omitting material information.

Defendants, acted with malice, with reckless disregard for the rights of plaintiff without reasonable or probable cause in their actions and omissions as the moving force in the fabricated parole violation.

Plaintiff states and asserts let the record, and exhibit show that facts.

Alan Scott Hahn, defendant, engaged on the malicious conduct which the records will and would show, they intentionally on purpose of depriving plaintiff of his constitutional rights to be free of criminal seizure and the right to due process under the fourth and 14th amendments to the United States and the State of Illinois.

## DOROTHY BROWN

Plaintiff mailed from Dixon Correctional Center a petition of writ of mandamus for a rehearing of his blotch parole board hearing, both hearings, at Statesville and at Dixon, on the procedures of (see exhibits C, D) September 19, 2012. Plaintiff gave instructions that enclosed was enough copies for the court and her office, and any other office who should have a copy. Plaintiff requested that she send plaintiff back 2 stamped copies of my record and copies of all the originals documents as exhibits. (C & D) April 11, 2013.

Ms. Brown's office sent a copy of plaintiff old appeal case. Plaintiff was requesting a copy from the court on his mandamus review, not the case appeal.

Plaintiff alleged even to this day, her office has forward a copy of his filed mandamus for this Honorable court to rule on. Due to this intentional hold up plaintiff still does not know how the court ruled on the mandamus, to see if the court told IDOL to grant plaintiff another parole board hearing.

Plaintiff alleges that it appears that her office has not or refusing to send a stamped copy and the court summary of the mandamus. If the document was filed.

Plaintiff reasserts that her office interference in denying plaintiff access to the court and denial due process.

## DEFENDANT UNKNOW CHIEF WARRANT OFFICER

The chief warrant officer should see a copy of the affidavit, and signed complaint from the parole officer or the complainant, showing violations of condition of parole. If there is a new criminal offense charges.

Plaintiff alleges that he never saw 2 police reports nor warrants on the charges against.

Plaintiff never saw any complaint signed by parole officer L. Muhammad, who allegedly the complaint is from. The chief warrant officer has authority for issue a warrant of arrest for paroles.

Plaintiff alleges a warrant would have to been issues March 1, 2012, to be serve on plaintiff, it was never done. Plaintiff issue is how could he be arrested and reincarnated, transported to Statesville without moving papers.

The unknown chief warrant officer is a good friend of Alan Scott Hahn and insured they can misuse paper work. Plaintiff asked for a copy of these moving papers. Plaintiff wondered did Alan Scoot Hahn, parole officers had an issued warrant for the plaintiff.

Plaintiff alleges it the complaint was signed by parole officer, L. Muhammad, or that parole officer parole officer Alan Scott Hahn used hearsay. This officer has and did aided in the conspiracy, falsifying a fabricated parole violation report, and not having a legal arrest warrant.

In Time magazine, Jan. 18, 1971 (Title SHAME OF THE PRISONS pg 53

In the 20th century society views the convicted felon as a social outcast. He has done wrong, so we rationalize and condone punishment in various forms. We express a desire for rehabilitation of the individual while simultaneously we do everything to prevent it. Society cares little for the conditions which a prisoner must suffer while in prison. He is a marked man. We tell him to return to the norm of behavior yet we brand him/her as virtually unemployable; he/she is required to live with his normal activities severely restricted and we react with sickened wonder and disquiet when he/she returns to a life of crime.

Arbitrary revocation unlawful punishment deprive a man/woman of his/her liberty, grievous loss, suffered, affected his interests.

Arbitrary parole revocation, claimant was taken summarily from private life and again regimented to one again in a prison. Paroling prisoners is part of the rehabilitative aim of the correctional philosophy.

The objective is to return a prisoner to a full family, friends community life. Parole is an important part of the rehabilitative process for most prisoners and its availability should not be restricted by the imposition of unless unreasonable conditions and fabricated and abused conduct on its administration.

# BACKGROUND

Plaintiff alleges that his parole violation, revocation was fabricated, false and improperly revoked knowingly, willfully by defendant, Alan Scott Hahn, L. Muhammad, Mr. Freeman, on the bases of some kind of romance, and/or harassment by the plaintiff. And that the Prisoner Review Board and that the decision of the prisoner review board knowing the violation was based upon a fraudulent, false, conspired parole Parole violation report, submitted by parole officer supervisor who wasn't a witness.

Plaintiff alleges that his parole revocation was initiated by a fable of Mr. Freeman who introduced the allegation of some kind of romance 'tween the plaintiff and parole officer, L. Muhammad, with harassment, which there wasn't a charge.

Plaintiff was wrongfully arrest, charged with false criminal charges, and fabricated parole violations, together and reimprisoned for another 18 months that plaintiff did not commit, or knew anything of such charges. There's no such record of committed offenses. States Attorney or circuit court clerk Dorothy Brown's office has record (See exhibits C & D)

Defendants all of them conspired under the auspices of two defendants Alan Scott Hahn, and Mr. Freeman with personal animosity, vindictive jealousy, resentment, personal protectiveness, retaliation, secretly. Mr. Freeman the one who implanted the fable into Alan Scott Hahn mind that there is a romance between plaintiff and defendant L. Muhammad #44

Due to this action is and was the cause of plaintiff reincarceration, in that deprived plaintiff due process, deprivation of his liberty and property and liberty interest under color of law.

Plaintiff asserts let the record reflect the illegal, fraudulent corruption, m these three defendants

## FIRST CAUSE OF ACTION

(Malicious Prosecution, Brought pursuant to 42 U.S.C.A. §1983)

Plaintiff realleges and incorporates by reference each of the allegations of this complaint.

On or about March 1, 2012, Defendants, Alan Scott Hahn, Freeman, L. Muhammad acting under color of authority, Mr. Freeman in dependence of I Doc, conspired to gather were the moving force behind the fabricated, and false criminal charges offense, and parole violations, and added on parole violation of conditions instituted against the Plaintiff for allegedly violating his parole conditions.

Defendants on or about, March 8 2012, acts and omissions, including, but not limited to, by knowingly or recklessly providing materially false, mislead ing, fabricated and fraudulent parole violation and incomplete information and/or omitting material information to the prosecution to the prosecuting agency on March 8, 2012 after plaintiff was already reincarcerated in Stateville Corr. Cntr.

Defendants actions was for the purpose of having plaintiff violated of parole knowing that it was reasonably foreseeable that their acts and omissions would be relied on.

Defendants acted with malice, with reckless disregard for the rights of plaintiff, and without reasonable or probable cause in their actions and omissions as the moving force in the prosecution of plaintiff in that they did not, and in good faith could not, believe Plaintiff to be guilty of the charges.

Defendants furthermore, conspired to cover up their false parole violation when the Criminal charges offense, was substituted, into a parole violation without formal legal court proceedings.

Defendants engaged in this malicious conduct with the purpose of depriving Plaintiff of his constitutional rights to be free of unlawful seizure and the right to due process under the fourth and 14th Amendments to the United States Constitution.

Defendants' acts, as the moving forces in instigating the criminal prosecution were willful, wanton, malicious and oppressive, as alleged, and the resulting arrest, prosecution, conviction and incarceration of Plaintiff were induced by fraud, fabricated, and conspiracy undertaken in bad faith in complete disregard for the rights of Plaintiff. These acts justify the awarding of punitive damages against Defendants.

## SECOND CAUSE OF ACTION

False Imprisonment, brought pursuant to courts supplemental jurisdiction under 28 U.S.C.A. § 1367 (a)

Plaintiff realleges and incorporates by reference each of the allegations contained in paragraphs 1 through of this complaint. As a direct and proximate consequence of the acts of defendants, and each of them as alleged, Plaintiff was unlawfully and falsely arrested, parole violated, reimprisoned on first charged offenses criminal offenses, to violated Plaintiff parole agreement, and a parole violation, in the State of Illinois, Illinois Dept. of Correction, for 18 month, the remaining of his parole agreement. Plaintiff did not violate his parole nor did he acquire any new criminal offenses. (See exhibits      )

Plaintiff suffered loss of any meaningful relationship with his spouse, other family members, friends, and coworks. Plaintiff is a community organizer and has enhance with the community.

Defendant Alan Scott Hahn, put in his parole violation report that he drafted and not parole officer L. Muhammed, Plaintiffs parole officer, that Plaintiff was a sex offender,

Defendant was arrested for a sex offense, which was not true. Plaintiff was arrested for a burglary in 2007. See (Exhibit F) never have plaintiff had a sex offense.

Plaintiff states that Defendant tryed to influence the Parole Board to label Plaintiff as a sex offender in his report. Defendants Alan Scott Hahn, and Mr Freeman had went so far as to put this label on the Streets, where gangs, drug dealers, homeless people, bums and everybody in the underworld, even Chicago Police Detectives follow the plaintiff every where he goes.

They even followed plaintiff in this great Building, trying to see who Im talking too. Every since, Plaintiff was release from Dixon corr. in July 5, 2013, these people have been following the plaintiff. 24 hours a day, 7 days a week non-stop. There have been Chicago Police Detectives following until I could Identify them in their cars.

There have been cab drivers tailing and following plaintiff. Young old, white, Black, Spanish, even Asian. Plaintiff believe that Alan Scott Hahn, could not convince the parole board put, label plaintiff as a sex offender, he took it apone his-self, and put the label on plaintiff (See exhibit A parole violation report)

Plaintiff asserts A man can lose all his money, but he can get it all back, but when a man lose his name, character character its very hard to get back, no matter how hard he try.

Defendant Alan Scott Hahn, tried to label Plaintiff as a sex offender.

Defendant Alan Scott Hahn

Plaintiff asserts, that Defendant Alan Scott Hahn, the purpetrator, master mind architect, designer, Parole officer Supervisor Alan Scott Hahn took it upon his self to initiate another diabolical label upon the plaintiff as a sex offender. Plaintiff was Sentence in 2007 for a burglary. (See exhibit    ) Plaintiff states that Defendant Alan Scott Hahn, and wrote in his parole violation report stated that he was a sex-offender, and he should be label as such.

Defendant Alan Scott Hahn tryed to influnce the PRB to classify Plaintiff as a sex offender to add on to the other charges, he had forged to enhance the punishment, Mentality, Socially. Aside the wrongfully, incarceration was planned to cause plaintiff a great public injury, disgrace (See parole violation report)

Plaintiff alleges that this label can, could cause great bodily harm., and instigate other injury to plaintiff, reputation, creditabity, loss of job, life, liberty, friendship. A cause of grievous and permanent injury.

Plaintiff asserts that since his release from Dixon, he has had all sorts of people following him around. Plaintiff has saw Chicago Police detectives, on foot and in their service cars until plaintiff started writing down their license plate numbers down.

Plaintiff asserts that Alan Scott Hahn did not accept the PRB decision on labeling plaintiff as a sex offender. So the Defendant took it upon his-self to put the label in the streets where these deprave individuals have been tailing and following plaintiff around the city.

Defendants failed to intervene to protect Plaintiff from knowengly, willfully and clearly seen wrongs in the Illinois Parole System and disgusting due process by the sentiment of one employee.

Plaintiff alleges that the employees of the administrative body intent to and did constitute acts covering up for their Subornates aided and assisted in the fabricated violation parole report and falsified criminal charges with the intention to and did cause plaintiff damages.

Plaintiff alleges that the Illinois department of corrections failure to follow its own rules, regulations, polices which constitute the violation of plaintiff constitutional rights under the due process clause of the fourteenth amendments.

Plaintiff reiterates that the charges, parole violation, and the add on parole violation of conditions all stemmed from personal protection, retaliation due to the false statement and the greatly exaggerated parole violation report, created with animosity and vindictive motive.

Without limitation, plaintiff suffered being followed every day and night. Plaintiff loss of society which cause him to be homeless, from July 5, 2012 until September, 2014. Loss of friendship, business relations, hobbies and earning, enduring great mental pain, depression, anxiety, antisocial habits, mental pain and suffering due to the Defendants conduct, and Plaintiffs resulting in re incarceration.

## THIRD CAUSE OF ACTION

### Malicious Prosecution under Illinois State law

Plaintiff realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 13 of this complaint.

Defendants Alan Scott Hahn, and the State of Illinois acting under color of authority were the moving force behind the fabricated, false, charges, in instigating the criminal prosecution at least thats what plaintiff was arrested and parole violation alleges. Plaintiff states the arrest was willful, wanton, malicious and oppressive, as alleged, and the resulting arrest, prosecution, conviction and incarceration of plaintiff was induced by fraud, perjury and fabricated evidence, and undertaken in bad faith in complete disregard of the rights of plaintiff. This acts justify the awarding of compensatory and punitive damages against Defendants.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests judgment against defendants for;

1. Compensatory damages in the amount of $ 2,000,000.00

2. Punitive damages in the amount of $20,000.00 each defendant

3. Reasonable attorney's fees in the amount of $

4. Costs of suit; and

5. Such other and further relief as the court deems just and proper.

Dated 12-28-2014

Abdullah Musa Khadyah
Abdullah Musa Khadyah
1801 So. Wabash St.
Chicago IL, 60616
cell - 773 543-3687